## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ERIC E. BERNARD (#R-25398) a/k/a TERRELL KING, | ) ) | |
| | ) | Case No. 20 CV 5368 |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge John Robert Blakey |
| JOHN BALDWIN, ROB JEFFREYS, RANDY PFISTER, SHERWIN MILES, JUSTIN WILKS, SGT. D. THOMAS (#5319), OFFICER A. JOHNSON (#2751), LT. JENKINS, JACQUELINE ADJALEY, SGT. S. KOCH (#6472), OFFICER McCURDY (#11720), OFFICER T. MROZIK (#11231), OFFICER C. GUTTOSCH (#4551), MAJOR JASON M. BERRY, DR. MIRSKY, NURSE V. GARCIA, NURSE TAUSEEF EHTERAMUDDIN, NURSE CUMBA, NURSE BRERZINSKI, WEXFORD HEALTH SOURCES, INC., UNKNOWN WEXFORD HEALTH SOURCES INC. EMPLOYEES, and UNKNOWN DEPARTMENT OF CORRECTIONS EMPLOYEES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## THIRD AMENDED COMPLAINT

Plaintiff, Eric E. Bernard, by and through his attorneys, LOEVY & LOEVY, complains

of the DEFENDANTS JOHN BALDWIN, ROB JEFFREYS, SHERWIN MILES, JUSTIN

WILKS, RANDY PFISTER, SGT. D. THOMAS (#5319), OFFICER A. JOHNSON (#2751),

LT. JENKINS (ID#?), SGT. S. KOCH (#6472), OFFICER McCURDY (#11720), OFFICER T.

MROZIK (#11231), OFFICER C. GUTTOSCH (#4551), MAJOR JASON M. BERRY (ID #?),

Dr. MIRSKY, NURSE V. GARCIA, NURSE EHTERAMUDDIN, NURSE CUMBIA, NURSE

BERZINSKI, UNKNOWN DEPARTMENT OF CORRECTIONS EMPLOYEES, and

JACQUELINE ADJALEY, WEXFORD HEALTH SOURCES, INC., and UNKNOWN

WEXFORD EMPLOYEES, and states as follows:

### Introduction

1.      On or around August 27, 2019, Eric Bernard, was unnecessarily and violently

extracted from his cell with no regard for his physical disabilities and sprayed with gas foam and

O.C. spray when Defendants extracted him from his cell at Stateville Correctional Center

("Stateville"), resulting in physical injuries and causing emotional distress.

2.      Several months prior to the cell extraction, Mr. Bernard had suffered a severe

medical event that left him immobile, without the ability to walk or use his arms. Plaintiff spent

several weeks hospitalized and then in a rehabilitation center as a result of his medical condition.

3.      When Plaintiff was released from the rehabilitation center, he was sent to

Stateville, where he was housed in the health care unit because of his physical limitations and

medical needs: including his inability to walk, stand, sit-up, bathe, or feed himself on his own.

4.      Defendants were aware of Mr. Bernard's significant medical issues and lack of

mobility. Despite this knowledge, on or about August 27, 2019, Defendants attempted to extract

Plaintiff from his health care unit cell by ordering him to walk to the chuck hole and cuff up.

When Mr. Bernard was unable to do so because of his known physical impairments, Defendants

proceeded to spray mace gas foam, and removed Mr. Bernard from his cell.

5.      As a result of Defendants' misconduct, Mr. Bernard suffered various physical and

emotional injuries and was denied medical care.

2

**Jurisdiction and Venue**

6.      This court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a) because Mr. Bernard brings this action under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"), and the Rehabilitation Act, 29 U.S.C. § 974, to remedy violations of his civil rights.

7.      This court has supplemental jurisdiction over Mr. Bernard's Illinois tort claims pursuant to 28 U.S.C. § 1367(a).

8.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all of the complained actions occurred within this district.

**Parties**

9.      Mr. Bernard was, at all relevant times, a prisoner of the IDOC incarcerated at Stateville located at 16830 South Broadway Street in Joliet, Illinois. In September 2019, Mr. Bernard was transferred to Dixon Correctional Center in Dixon ("Dixon"), Illinois, where he is presently incarcerated.

10.     Defendant IDOC is a government agency responsible for all Illinois state prisons, including Stateville and Dixon.

11.     Defendant John Baldwin is the former Director of IDOC, responsible for the overall operations of the IDOC. Defendant Baldwin is being sued in his individual and official capacities.

12.     Defendant Rob Jeffreys is the Acting IDOC Director, responsible for the overall operations of the IDOC. Defendant Jeffreys is being sued in his official capacity only.

13.     Defendant Sherwin Miles was the Assistant Warden at Stateville Correctional Center at all times relevant. Defendant Miles is being sued in his individual and official capacities.

14.     Defendant Justin Wilks is an IDOC employee and the current acting warden of Dixon where Mr. Bernard currently resides. Defendant Wilks is being sued in his official capacity only.

15.     Defendant Randy Pfister is an IDOC employee and the former warden of Stateville. At all relevant times, he was acting under color of law. Pfister is being sued in his individual and official capacities.

16.     Defendant Lt. Jenkins is an IDOC employee and the correctional lieutenant. At all relevant times, Lt. Jenkins was acting under color of law. Jenkins is being sued in his individual capacity.

17.     Defendant Sgt. Thomas is an IDOC employee and a correctional officer sergeant. At all relevant times, Sgt. Thomas was acting under color of law. Thomas is being sued in his individual capacity.

18.     Defendant Sgt. Johnson is an IDOC employee. At all relevant timesSgt. Johnson was acting under color of law. Johnson is being sued in his individual capacity.

19.     Defendant Sgt. Koch (#6472) is an IDOC employee. At all relevant times, Sgt. Koch was acting under color of law. Koch is being sued in his individual capacity.

20.     Defendant Officers Guttosch (#4551), T. Mrozik (#11231), McCurdy (#1172) are IDOC employees. At all relevant times Defendants Guttosch, Mrozik, and McCurdy were acting under color of law and are sued in their individual capacity.

21.     Unknown Illinois Department of Corrections Employees were employed as correctional officers, ("Correctional Officer Defendants") who were assigned to work on the extraction team that participated in the cell extraction on or about August 27, 2019, which is the subject matter of this complaint. Correctional Officer Defendants were all employees of IDOC and acting under color of law at all times relevant for this complaint. Correctional Officer Defendants are sued in their individual capacity.

22.     Unknown Illinois Department of Corrections Employees who may have been employed as nurses in the Health Services Unit at Stateville ("IDOC Health Services Defendants"). At all relevant times, the IDOC Health Services Defendants were acting under color of law and are being sued in their individual capacity.

23.     Defendant Jaqueline Adjaley is a certified nurse assistant that worked at Stateville in the Health Services Unit. At all relevant times,, Ms. Adjaley was an employee of Wexford Health Sources. At all relevant times, Jaqueline Adjaley was acting under color of law. Adjaley is being sued in her individual capacity.

24.     Defendants Nurse V. Garcia, Nurse Ehteramuddin, Nurse Cumba and Nurse Berzinski are registered nurses and/or certified nurse assistants and/or medical assistants that worked at Stateville in the Health Services Unit. On information and belief Defendants Garcia, Ehteramuddin, Cumba and Berzinski were all employees of Wexford Health Sources, Inc. At all times, these Defendants were acting under color of state law and are being sued in their individual capacities.

25.     Unknown Wexford Health Sources Employees who worked as nurses at Stateville. On information and belief, some or all of the nurses who worked at the Stateville Health Services Unit during the relevant timeframe were employees of Wexford Health Sources.

5

26.     Defendant Wexford ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at Illinois Department of Corrections prisons throughout the state. At all relevant times, Wexford was responsible for implementing, overseeing, and supervising the policies regarding medical care at Stateville and IDOC generally. Wexford was, at all relevant times, acting under color of law by and through its lawful agents, including the individual defendants and other unknown healthcare employees at Stateville.

### Allegations

27.     Mr. Bernard is an inmate in IDOC custody with a long history of mental health issues.  He has been diagnosed with severe mental illnesses including schizoaffective disorder (bipolar), post-traumatic stress disorder, antisocial personality disorder, and borderline personality disorder.

28.     In March 2019, while at Pontiac Correctional Center, Mr. Bernard suffered a severe medical event including a cerebrovascular accident, seizures and dyskinesia, after which Mr. Bernard suffered extreme body and muscle weakness, an inability to speak, and an inability to move the entire right side of his body.  He was unable to walk or stand on his own and could only sit up with assistance.

29.     After the event, Mr. Bernard was initially hospitalized at the University of Illinois Hospital where he underwent a brain biopsy and was then transferred to Schwab Rehabilitation Hospital ("Schwab") where he received physical therapy and rehabilitative care.

30.     In May 2019, Mr. Bernard was discharged from Schwab and transferred to Stateville.

31.     Because of his significant physical impairment, Mr. Bernard was housed in the Health Care Unit at Stateville as he required full-level self-care assistance. Medical staff were required to use various devices in order to care properly for Mr. Bernard, including moving him safely. Mr. Bernard also required medical assistance to eat, toilet, and bathe.

32.     Medical staff followed certain protocols to transfer Plaintiff due to his fragile physical condition. Based on information and belief, a sergeant was required to be present on the health care unit when Mr. Bernard was moved, fed or bathed.

33.     During this timeframe, Defendants Jenkins, Thomas and Johnson regularly were assigned to the health care unit where Mr. Bernard was housed and were personally familiar with his physical limitations.

34.     Additionally, during this same time period, Mr. Bernard was on continuance crisis watch/observation due to self-harm and suicidal ideations related to his mental health diagnoses.

35.     In the weeks leading up to the August 27th cell extraction, Plaintiff had interactions with Defendants Thomas and Jenkins. As a result, both Defendants Thomas and Jenkins were personally aware of Plaintiff's physical limitations based on his medical condition.

36.     Specifically, within a few weeks prior to the August 27, 2019, extraction, Defendant Thomas participated in a cell extraction of Plaintiff during which Plaintiff was put in a four-point restraint. During the early August cell extraction, Defendant Thomas and the other correctional officers used protocols to move Plaintiff safely and without resorting to physical violence, strikes or physical abuse.

37.     After the early August cell extraction, Plaintiff's mattress was removed from his cell for approximately ten days.

38.     In the days leading up to the August 27th extraction, Defendants Thomas and Jenkins both verbally threatened Mr. Bernard, threatening that he was going to get his "ass beat" or words to that effect.

39.     On August 27, 2019, Defendant Mirsky requested that Mr. Bernard be placed in four-point restraints.

40.     Defendant Major Berry ordered the tactical unit to perform a cell extraction to place Mr. Bernard in four-point restraints.

41.     On August 27, 2019, a tactical team consisting of Defendants Sgt. Johnson, Sgt. Koch, Sgt. Thomas, Defendant Officers Guttosch, Mrozik and McCurdy, approached Mr. Bernard's cell and ordered the crisis watch officer to exit the unit.

42.     Defendant Sgt. Koch then ordered Mr. Bernard to stand up and walk to the front of his cell to be cuffed.

43.     Defendant Correctional Officers, including but not limited to Defendant Thomas, knew that Mr. Bernard was physically unable to comply with these commands.

44.     Defendants Correctional Officers then threatened to use O.C. spray if Mr. Bernard did not comply with their commands to come to the cell door and cuff up.

45.     Mr. Bernard informed the Defendants present for the cell extraction, including Defendants Koch, Johnson, Guttosch, Mrozik and McCurdy that he is disabled and was unable to move to comply with the orders.

46.     Additionally, inmates housed in nearby cells yelled to the Defendant Correctional Officers that Mr. Bernard is immobile and would not be able to comply with their commands.

47.     Despite knowledge of Mr. Bernard's physical limitations, Defendants pressed on and stated that they would give him three more direct orders before utilizing the gas foam spray and would extract him by force.

48.     Obviously, Mr. Bernard was unable to comply with the Defendant Correctional Officers' commands.

49.     Defendant Correctional Officers proceeded to spray Mr. Bernard with has foam spray causing intense burning on his skin on his body, face and in his eyes. The gas foam spray also caused Plaintiff to have difficulty breathing, which caused him anxiety and distress.

50.     Defendant Correctional Officers did not stop. Instead, Defendant Correctional Officers repeated their command that Plaintiff move to the cell door and cuff up.

51.     Again, Plaintiff was physically unable to comply with the Defendants' commands.

52.     Despite observing that Plaintiff was immobile and knowing he had been sprayed with gas foam spray, repeatedly, Defendants nevertheless proceeded to spray O.C. spray onto Mr. Bernard. The O.C. spray caused Plaintiff to feel like he was unable to breathe, which caused fear and panic.

53.     Defendants then charged into his cell.

54.     On information and belief Defendant Johnson pushed Mr. Bernard's head into a metal vent with his shield guard. Defendant Correctional Officers then kneed Plaintiff and struck him in his body.

55.     Defendant Correctional Officers also used verbal assaults calling him a "bitch ass motherfucker" or words to that effect.

56.     Defendant Correctional Officers as well as the Wexford Health Sources Employee Defendants and/or IDOC Health Services Defendants did not intervene to stop the abuse.

57.     Defendant Correctional Officers then shackled Plaintiff.

58.     Defendant Correctional Officers' conduct during the cell extraction resulted in physical injury and bruising on Plaintiff's head, face and arms and caused pain in his lower back and hip. Plaintiff's lip was also lacerated by Defendant Correctional Officers' actions.

59.     Defendant Correctional Officers then tied-up up Mr. Bernard by tying his hands and feet together.

60.     Defendant Correctional Officers did not follow the protocols to safely move Mr. Bernard or seek any assistance with the medical staff that were present that day despite knowledge that Plaintiff required specialized medical attention to safely move him.

61.     Defendant Correctional Officers' manner of moving Mr. Bernard from his cell caused his body unnecessary pain and discomfort in addition to the O.C. spray and gas foam that continued causing him discomfort due to his inability to clean off in the shower.

62.     Defendant Correctional Officers then put Plaintiff into a chair inside the shower in the HSU.

63.     Because of the shower being too small, Defendant Correctional Officers could not safely place him in the shower chair.

64.     Plaintiff fell out of the shower chair due to his inability to control his arms or legs. Rather than assisting him, Defendants Correctional Officers picked him up and threw him onto the shower floor where they stated that Mr. Bernard needed to stand up or he will not be showered.

10

65.     Mr. Bernard was physically unable to stand unassisted and so he remained on the shower floor.

66.     Plaintiff was also forced to lie limp on the dirty shower floor struggling to breathe while a fellow inmate yelled out for someone to help him.

67.     Defendants Correctional Officers' physical force and total disregard for Plaintiff's physical impairments caused him pain and continued burning in his eyes, nose and face from the OC spray and gas foam left for prolonged periods on his skin.

68.     Eventually, medical staff intervened and reminded the Defendant Correctional Officers that Mr. Bernard is immobile and can only be transferred by medical staff and medical devices.

69.     Because of the lack of an ADA accessible shower, Mr. Bernard was unable to clean the O.C. Spray and gas foam off his body. Mr. Bernard suffered a continued burning sensation and difficulty breathing over that night.

70.     Medical staff then moved Mr. Bernard from the shower floor using the appropriate devices and placing him on a stretcher.

71.     Mr. Bernard was then returned back to his cell and placed in 4-point restraints, in which he remained for the next 2 hours or so.

72.     While some of the Defendant nurses present wiped Mr. Bernard's skin, particles from the spray and gas foam remained on his skin until the next morning when a healthcare worker bathed Mr. Bernard with soap and water, washed his hair and flushed his eyes. The healthcare worker had to fill several foot pans with hot water to clean him.

73.     Mr. Bernard still did not receive any medical treatment for his injuries.

74. Shortly thereafter, Mr. Bernard was transferred to Dixon Correctional Center and then was again sent to Schwab for rehabilitation services.

75. Mr. Bernard continued to suffer physical pain from the physical abuse he suffered in the August 27th cell extraction.

76. As a result of Defendants' misconduct, Mr. Bernard's ability to participate in his rehabilitation therapy was limited.

77. The cell extraction that Defendants performed on August 27, 2019, to remove Mr. Bernard from his cell, was conducted consistent with the cell extraction policy promulgated by the Illinois Department of Corrections. That policy violated Mr. Bernard's rights in that it failed to address or make reasonable accommodations for cell extractions performed on physically disabled inmates who are unable to ambulate to the cell door in order to comply with the tactical unit officers' command to go to the cell door and be placed in hand cuffs.

78. The IDOC's policy and its failure to address or accommodate for an inmate who is physically unable to get to the cell door to be handcuffed necessarily results in the unjustified use of gas foam and O.C. spray because a physical disabled inmate is unable to comply with the tactical officer's commands to "cuff up."

79. The IDOC cell extraction policy in place also violated Mr. Bernard's rights by failing to address or make reasonable accommodations for mentally ill inmates such as Mr. Bernard, who was at the time of his extraction under continuous watch for a mental health crisis. IDOC also failed to adequately train its correctional officers who were assigned to tactical units, including Defendants Koch, Guttosch, Johnson, Mrozik, McCurdy, and Thomas, to perform cell extractions on inmates who are physically disabled and unable to walk to the cell door unassisted.

12

80.     The IDOC's cell extraction policy was the moving force behind what caused Mr. Bernard to be extracted from his cell on August 27, 2019, and the cause of his physical and emotional injuries he suffered as a result.

81.     Pleading in the alternative, the IDOC lacked a policy for cell extractions to be performed on physically disabled inmates or cell extractions performed on inmates suffering from mental illness or a mental health crisis.

82.     Over the past several years, Mr. Bernard has been placed on crisis watch in IDOC due to his mental health issues. He has also needed to be placed in restraints for his own safety.

83.     Based on that history, Plaintiff reasonably expects that he may be placed or request to be placed on crisis watch and/or put in restraints for his own safety in the future. Mr. Bernard further expects that correctional officers will be ordered to extract him from his cell.

84.     On information and belief, the IDOC has maintained the same or virtually the same cell extraction policy that was in place in August 2019 that requires inmates to walk to the cell door to be placed in handcuffs and does not accommodate for inmates that are disabled.

85.     On information and belief, the IDOC's cell extraction policy does not mandate any accommodation for disabled inmates or require correctional officers to modify deploying O.C. spray and gas foam for inmates who are physically unable to comply with their command to walk to the cell door.

86.     Accordingly, Plaintiff reasonably expects that IDOC correctional officers at Dixon or some another IDOC facility were he to be transferred will be ordered to extract Mr. Bernard from his cell for some purpose, and in doing so will utilize the same IDOC cell extraction policy to enter his cell and put Mr. Bernard in restraints that was used on August 27, 2019. Mr. Bernard fears that he will again be subjected to unnecessary and unreasonable use of

force-- namely that he will automatically be sprayed with O.C. spray and gas foam because he will again not be able to ambulate to the cell door to comply with the correctional officer's commands conducting the cell extraction.

## Count I
### 42 U.S.C. § 1983 – Excessive Force (Eighth Amendment)
### Defendants Thomas, Johnson, Koch, Mrozik, Guttosch, and McCurdy (individual capacities)

87.     Mr. Bernard re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

88.     As described above, the Correctional Officer Defendants intentionally inflicted unnecessary physical and emotional pain and suffering on Mr. Bernard by unnecessarily spraying him with O.C. spray,gas foam spray, and forcibly extracting him from his cell in the medical unit with total disregard for his physical paralysis and/or physical inability to comply with their command to walk to the chuck hole to cuff up.

89.     Correctional Officer Defendants used unnecessary physical force for the purpose of harming Plaintiff and lacked good faith to maintain or restore the security of the facility.

90.     Defendants also failed to provide medical attention to Mr. Bernard after Defendants extracted him from his cell and sprayed him with OC spray and gas foam spray, causing him to suffer bruising on his head and arm, pain in his back and body, and laceration of his lip, as well as burning in his eyes and on his face from the spray that remained on his skin for a prolonged period of time.

91.     Alternatively, Defendants knew the risk of harm that their misconduct posed and nevertheless acted with deliberate indifference in carrying out the cell extraction without use of the proper medical protocols given Mr. Bernard's physical impairments.

92. As a result of Defendants' unjustified and unconstitutional conduct, Mr. Bernard suffered pain, emotional distress, and injuries.

93. Due to Plaintiff's physical limitation and mental illness diagnoses, Plaintiff reasonably expects that he will be subjected to an IDOC cell extraction in the future.

94. Plaintiff remains in IDOC custody at Dixon.

## Count II

### 42. U.S.C. § 1983 – Cruel and Unusual Punishment (Eighth Amendment)
### Defendants Berry, Pfister, Miles, Mirsky, Thomas, Johnson, Koch, Mrozik, Guttosch, and McCurdy (individual capacities)

95. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

96. Defendants' cell extraction of Plaintiff on August 27, 2019, subjected him to cruel and unusual punishment in that he was unnecessarily and unreasonably sprayed with O.C. spray and gas foam because he could not walk to the cell door as Defendants ordered.

97. Defendants knew or should have known that Plaintiff was physically disabled and unable to walk to the cell door.

98. Defendants were deliberately indifferent to the fact that Plaintiff physically could not comply with the order to ambulate to his cell door.

99. Defendants were aware that Plaintiff's failure to comply with the Defendants' order would result in the use of O.C. spray and gas foam, which Defendants knew would cause Plaintiff physical harm, including but not limited to intense burning of his skin and eyes, coughing and physical distress.

100. Defendants knowingly failed to take any steps to prevent Mr. Bernard from being sprayed with O.C. spray and gas foam.

101.    Mr. Bernard would not have needlessly been subjected to O.C. spray and gas foam had Defendants taken reasonable and modest steps to determine whether Mr. Bernard was physically able to walk to the cell door as commanded.

102.    Defendants acted under color of state law.

103.    As a result of Defendants' conduct, Plaintiff suffered physical and emotional injuries.

<u>Count III</u>
**42. U.S.C. § 1983 –** *Monell* **Unlawful policy claim as to Defendant Jeffreys (official capacity)**

104.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

105.    On information and belief, IDOC has a cell extraction policy that does not accommodate for inmates who are physically disabled like Mr. Bernard, and who are unable to comply with correctional officers' commands to walk to the cell door to be handcuffed. Failure to comply despite physical limitations will necessarily result in O.C. spray and gas foam being used on the inmate.

106.    On information and belief, IDOC's cell extraction policy necessarily requires the deployment of O.C. spray and gas foam during a cell extraction without regard to an inmate's physical disability that may make it impossible to comply with the officer's commands.

107.    On information and belief, IDOC's cell extraction policy necessarily requires the deployment of O.C. spray and gas foam during a cell extraction without regard to an inmate's mental illness that may make it impossible to comply with the officer's commands.

108.    On information and belief, there is no requirement for the correctional officer or commanding officer ordering a cell extraction to first determine if any modification of IDOC's

cell extraction policy should be made to accommodate for an inmate's physical and/or mental illness before administering a cell extraction.

109.    Mr. Bernard is physically disabled and is unable to walk.

110.    Mr. Bernard also suffers from mental illnesses that frequently require that he be on crisis watch and also be restrained so he will not harm himself.

111.    Mr. Bernard reasonably expects that in the future he may need to be placed or he may request to be placed in restraints to prevent self-harming.

112.    Mr. Bernard fears that he may be subjected to IDOC's cell extraction policy in the future and that will necessarily result in the unnecessary use of O.C. spray and/or gas foam because he will be unable to comply with the officers' order to walk to the cell door to be placed in handcuffs.

113.    IDOC's cell extraction policy, to the extent that it fails to accommodate for inmates that cannot comply with the policy's requirement to walk to the cell door, is an unreasonable and unlawful use of force in that physically disabled inmates, who are unable to walk unassisted, will be sprayed with O.C. spray and gas foam.

## <u>Count IV</u>
**42 U.S.C. § 1983 – Denial of Medical Care (Eighth Amendment)**
**Against Defendants Pfister, Miles, Garcia, Ehteramuddin, Cumba, Brezrinski, Adjaley, Dr. Mirsky, Koch, Guttosch, Johnson, Mrozik, McCurdy, Thomas and Berry (individual capacities)**

114.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

115.    As described above, Defendants had notice of Plaintiff's medical needs and mental health needs, including his inability to walk, and they knew the risk of harm he faced if he did not receive appropriate medical care after being sprayed with O.C. spray and gas foam.

17

Despite that knowledge, Defendants failed to provide Plaintiff with proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

116.    Specifically, the O.C. spray and gas foam remained on Plaintiff's skin, hair, body and eyes for a prolonged period of time causing him pain and burning on his skin and in his eyes.

117.    Plaintiff was not properly washed until the following day after he was sprayed. Defendants' delay in providing appropriate medical after Mr. Bernard was subjected to the use of O.C. spray and gas foam.

118.    The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, and/or with reckless indifference to Plaintiff's rights.

119.    Alternatively, Defendants were deliberately indifferent to Plaintiff's objectively serious medical needs, and their actions were undertaken intentionally, with malice, and/or with reckless indifference to his rights.

120.    Plaintiff's injuries were proximately caused by Defendants' misconduct in failing to address his medical needs.

121.    Defendants knowingly failed to provide medical care to Plaintiff for his physical injuries, including but not limited to care for his injuries to his head and body, as well as providing necessary medical washing to remove the O.C. spray and gas foam spray from Plaintiff's face and skin.

122.    As a result, Plaintiff unnecessarily suffered prolonged burning of his skin, difficulty breathing, anxiety and emotional distress.

**Count V**
**42 U.S.C. § 1983 – Failure to Intervene (Eighth Amendment)**
**Defendants Pfister, Miles, Nurse V. Garcia, Nurse Ehteramuddin, Nurse Cumba, Nurse Brerzinski, Jacqueline Adjaley, Dr. Mirsky, SGT. S. Koch (#6472), Officer C. Guttosch (#4551), Officer A. Johnson (#2751), Officer T. Mrozik (#11231), Officer McCurdy (#11720), SGT. D. Thomas (#5319 and Major Jason Berry**

123.     Mr. Bernard re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

124.     As described above, Defendants had a reasonable opportunity to prevent the violation of Mr. Bernard's constitutional rights set forth above had they been so inclined; but they failed to do so.

125.     Defendants' actions were undertaken intentionally, with malice and with reckless indifference to Mr. Bernard's rights.

126.     As a direct and proximate result of the misconduct described in this count, Mr. Bernard's rights were violated, and he suffered physical and emotional injuries.

127.     Specifically, Defendants failed to intervene in the physical and verbal assault of Plaintiff during the cell extraction on August 27th and failed to observe required extraction protocols for physically disabled and medically vulnerable inmates, who are unable to comply with certain orders, such as to ambulate to the cell door independently.

**Count VI**
**Violations of the Americans with Disabilities Act**
**Defendants Baldwin, Jeffreys, Miles and Pfister (official capacities)**

128.     Mr. Bernard re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

19

129. On July 12, 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

130. The IDOC is a public entity because it is a department, agency, special purpose district, or other instrumentality of the State of Illinois, as defined in 42 U.S.C. § 12131(1).

131. Mr. Bernard, at all times relevant to this complaint, was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2), and had a right not to be subjected to discrimination on the basis of his disability. 42 U.S.C. § 12132.

132. Under the ADA, 42 U.S.C. § 12132, and 28 C.F.R. § 35.130(a), Defendants must ensure that individuals in their custody are not, on the basis of a disability, excluded from participation in or denied the benefits of generally available services, programs, or activities.

133. Individuals in IDOC custody, like Mr. Bernard, are wholly dependent on the IDOC for medical care, accommodation, and safety.

134. Defendants failed to accommodate Mr. Bernard's disability by, among other things, refusing to accommodate his physical limitations in the manner in which they extracted him from his cell by requiring that he self-ambulate to the cell door to comply with the Defendants' commands or be subjected to O.C. spray and gas foam.

135. Defendants knew that Mr. Bernard and other physically disabled inmates in their custody would not be able to comply with the extraction orders, such as being ordered to ambulate to the cell door, and therefore would be unnecessarily subjected to O.C. spray and/or

gas foam spray. However, despite having knowledge of the physical limitations of some inmates, including Mr. Bernard, IDOC nevertheless failed to reasonably accommodate and modify the extraction directives promulgated by IDOC and at Stateville to address the needs of medically compromised inmates.

136.    As a result of Defendants' wrongful conduct, Mr. Bernard was subjected to unnecessary pain and suffering.

**Count VII**
**Violation of the Rehabilitation Act**
**(Defendants Baldwin, Jeffreys, Miles and Pfister)**

137.    Mr. Bernard re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

138.    The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

139.    IDOC receives federal financial assistance within the meaning of 29 U.S.C. § 794(a).

140.    IDOC constitutes a "program or activity" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B), and is required to comply with the Rehabilitation Act.

141.    Mr. Bernard is a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(2). He has a right not to be excluded, on the basis of his disability, from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

142.    Defendants failed to accommodate Mr. Bernard's disability by, among other things, refusing to accommodate his physical limitations in the manner in which they extracted him from his cell.

143.    Defendants knew that Mr. Bernard and other physically disabled inmates in their custody would not be able to comply with the extraction orders, such as being ordered to ambulate to the cell door, and therefore would be unnecessarily subjected to O.C. spray and/or gas foam spray. However, despite having knowledge of the physical limitations of some inmates, they nevertheless failed to reasonably accommodate and modify the extraction directives promulgated by IDOC and at Stateville to address the needs of medically compromised inmates.

144.    As a result of Defendants' wrongful conduct, Mr. Bernard was subjected to unnecessary pain and suffering.

**Count VIII**
**Willful and Wanton Misconduct under Illinois Law**
**(Defendants Thomas, Jenkins, Koch, Mrozik, Guttosch, and McCurdy)**

145.    Mr. Bernard re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

146.    Because Mr. Bernard was a prisoner in their care, Defendants had a duty to refrain from deliberately or intentionally harming Mr. Bernard or acting in a manner that showed utter indifference to or conscious disregard for Mr. Bernard's safety.

147.    As described above, Defendants' physical abuse, including striking him in his head and body, spraying him in his face with OC spray and gas foam spray during a cell extraction when Mr. Bernard was physically incapacitated, caused Mr. Bernard extreme emotional distress.

148.   Defendants were aware that an injury would likely result from their course of action and recklessly disregarded the consequences of those actions.

149.   As a direct and proximate result of Defendants' willful and wanton misconduct, Mr. Bernard suffered physical and emotional injuries.

### Count IX
**Intentional Infliction of Emotional Distress under Illinois Law**
**Defendants Adjaley, Thomas, Jenkins, Koch, Mrozik, Guttosch, and McCurdy**

150.   Mr. Bernard re-alleges and incorporates the preceding paragraphs of this pleading as if fully alleged herein.

151.   As described above, Defendants' physical abuse including striking him in his head and body, spraying him in his face with OC spray and gas foam spray during a cell extraction when Mr. Bernard was physically incapacitated caused Mr. Bernard extreme emotional distress.

152.   Defendants' actions set forth above were rooted in an abuse of power or authority.

153.   Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress or with reckless disregard of that probability.

154.   Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to Mr. Bernard's rights.

155.   As a direct and proximate result of this misconduct, Mr. Bernard suffered injuries, including severe emotional distress and great conscious pain and suffering.

23

## Count X
### Respondeat Superior
### Against Defendant Wexford

156.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

157.    In committing the acts alleged in the preceding paragraphs, on information and belief Defendants  Adjaley, Ehteramuddin, Garcia, Cumba, and Berzinski were employees, members, and agents of Wexford, acting at all relevant times within the scope of their employment.

158.    Consequently, Defendant Wexford is liable for the actions of its employees acting within the scope of their employment under state law.

159.    Defendant Wexford, as a private corporation acting under color of state law, should additionally be held liable under 42 U.S.C. § 1983 for the conduct of its employees acting within the scope of their employment. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 793–95 (7th Cir. 2014).[1]

---

[1] Plaintiff acknowledges that the Seventh Circuit has thus far declined to recognize claims against Wexford under 42 U.S.C. § 1983 based on a theory of respondeat superior.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Eric Bernard demands judgment against each defendant and against Defendants, jointly and severally, awarding him:

1.      Compensatory damages for physical injuries, emotional distress, pain and suffering, and actual and direct losses and expenses Mr. Bernard has incurred and will incur as a result of Defendants' individual and collective actions, the exact amount to be proven at trial, together with prejudgment interest and costs;

2.      An award of punitive damages against each defendant to punish his individual and collective wrongful conduct and to deter future wrongful conduct;

3.      Mr. Bernard's costs and disbursements arising from this action, including reasonable attorneys' fees, costs and expenses, pursuant to 42 U.S.C. § 1988;

4.      Defendant Jeffreys and Wilks are ordered and enjoined from causing Mr. Bernard to be subjected to IDOC's cell extraction policy that requires him to ambulate to the cell door to be handcuffed in the future or that does not account for and accommodate his physical disability and mental illness; and

5.      Such further relief as the Court deems just and proper.

## **Jury Demand**

Mr. Bernard hereby requests trial by jury on all claims so triable.

Respectfully Submitted,

**ERIC BERNARD**


By: _s/ Heather Lewis Donnell_____
*One of His Attorneys*


Heather Lewis Donnell
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900 (phone)
heather@loevy.com