## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ERIC E. BERNARD (#R-25398)
a/k/a TERRELL KING,

      Plaintiff,

      v.

JOHN BALDWIN, *et al.*,

      Defendants.

Case No. 20-cv-5368

Judge John Robert Blakey

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Eric Bernard ("Mr. Bernard" or "Plaintiff"), an inmate currently incarcerated at the Dixon Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was confined at the Stateville Correctional Center ("Stateville"). Mr. Bernard claims that Defendants, correctional officials and healthcare providers who work at Stateville, violated his constitutional rights by engaging in excessive force and acting with deliberate indifference to his medical needs. More specifically, Mr. Bernard contends that Defendants unjustifiably sprayed him with gas foam spray, oleoresin capsicum ("O.C." or "pepper") spray, and physically assailed him in an effort to remove him from his cell; Defendants then proceeded to deny him follow-up medical care. Mr. Bernard also asserts violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, and Illinois State law.

Defendants seek dismissal of a patchwork of Plaintiff's claims. Defendant Jacqueline Adjaley ("Adjaley"), a certified nurse assistant at Stateville, moves to dismiss Plaintiff's claim of intentional infliction of emotional distress ("IIED") against her. *See* [69]. Defendant Wexford Health Sources, Inc. ("Wexford"), a private corporation that contracts with the State of Illinois to provide healthcare services at Illinois Department of Corrections ("IDOC") prisons, moves to dismiss the entirety of Plaintiff's complaint. *Id*. The correctional center officers and employees (the "IDOC Defendants") move to dismiss Plaintiff's *Monell* claim against Defendant Jeffreys (Count III) and Plaintiff's Illinois state law claims (Count VIII and Count IX). In addition, two IDOC employees, Defendant Pfister and Defendant Miles, move to dismiss Plaintiff's excessive force (Count II), denial of medical care (Count IV), failure to intervene (Count V), ADA (Count VI) and Rehabilitation Act (Count VII) claims as asserted against them. *See* [84].

For the following reasons, the Court grants Defendants' motion [69], and grants in part, and denies in part, Defendants' motion, [84].

## I.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). When deciding a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all inferences in the plaintiff's favor. Courts are not,

however, "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and allege facts that are "enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are not enough. *Id.* The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## II.    Background[1]

Mr. Bernard is an IDOC inmate presently incarcerated at the Dixon Correctional Center. [57] ¶ 9. Mr. Bernard has a long history of mental health issues; he has been diagnosed with schizoaffective, post-traumatic stress, antisocial personality and borderline personality disorders. *Id.* ¶ 27. Given his mental health diagnoses, Mr. Bernard was placed on continual crisis watch and placed under observation while detained at Stateville. *Id.* ¶ 34.

---

[1] The Court draws the facts from Plaintiff's Third Amended Complaint, [57], and presumes them to be true for the purposes of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

In March 2019, he suffered a severe medical event that left him with extreme body and muscle weakness, an inability to speak and an inability to move the entire right side of his body. *Id*. ¶ 28. He is unable to walk, stand, or sit up without assistance. *Id*. He was placed in the Health Care Unit at Stateville to facilitate his continuous care, physical therapy and rehabilitative care following the incident. *Id*. ¶¶ 29–31. Given his fragile condition, IDOC officers regularly assigned to the Health Care Unit became "personally familiar with his physical limitations." *Id*. ¶ 33. IDOC employees were trained in the proper process for removing Plaintiff from his cell, and several Defendants previously participated in a successful cell extraction of Plaintiff without resorting to physical violence or abuse. *Id*. ¶¶ 35–36.

In August 2019, Mr. Bernard's environment turned hostile; Defendants Thomas and Jenkins, two correctional officer sergeants, made threatening remarks to Plaintiff and he was forced to sleep in his cell without a mattress for approximately ten days. *Id*. ¶¶ 37–38. On August 27, Defendant Mirsky requested that Mr. Bernard be placed in four-point restraints; Defendant Major Berry instructed a tactical unit to perform a cell extraction of Mr. Bernard in order to do so. *Id*. ¶¶ 39–40. The tactical team, comprised of Defendants Johnson, Koch, Thomas, Guttosch, Mrozik and McCurdy ("Correctional Officer Defendants"[2]), approached Mr. Bernard's cell

---

[2] Defendant Jenkins (an IDOC correctional lieutenant and IDOC Defendant, [57] ¶ 16) is not alleged to have been present during the cell extraction, *see* [57] ¶¶ 41 (describing the tactical team as comprised of "Defendants Sgt. Johnson, Sgt. Koch, Sgt. Thomas, Defendant Officers Guttosch, Mrozik and McCurdy"), 45 (identifying the Defendants "present for the cell extraction" as "Defendants Koch, Johnson, Guttosch, Mrozik, and McCurdy"), but Plaintiff does assert that Defendant Jenkins: (1) was regularly assigned to the health care unit where Mr. Bernard was housed and became familiar with Plaintiff's physical limitations as a result, *id*. ¶ 33; and (2) made threatening statements to Plaintiff in the weeks leading up to the cell extraction, *id*. ¶ 38.

4

and instructed him to walk towards them in order to be "cuffed." *Id.* ¶¶ 41–42. Mr. Bernard failed to comply with the Correctional Officer Defendants' commands. *Id.* ¶¶ 43–48. Indeed, Mr. Bernard could not comply with their commands given his severe physical limitations. *Id.* ¶¶ 46, 48. The Correctional Officer Defendants then warned Mr. Bernard that they would give "three more direct orders before utilizing the gas foam spray and would extract him by force," at which point numerous inmates housed nearby began to yell that Mr. Bernard is immobile and would be unable to comply with the demands. *Id.* ¶¶ 46–47. The Correctional Officer Defendants, disregarding their alleged knowledge of Mr. Bernard's physical limitations and the pleas of the nearby inmates, resorted to force. *Id.* ¶¶ 49, 52–55. They showered Mr. Bernard with gas foam spray, pepper spray, and physically and verbally assailed him until they were able to place him in shackles. *Id.* ¶¶ 49–57. As a result of the forceful extraction, Mr. Bernard suffered bruising, pain and a facial laceration. *Id.* ¶ 58. He also experienced severe discomfort and distress as a result of his chemical exposure. *Id.* ¶¶ 49, 52.

Following the cell-removal, the Correctional Officer Defendants tied Mr. Bernard's hands and feet together and carried him to a shower. *Id.* ¶¶ 60–62. They attempted to seat Mr. Bernard in a chair inside the shower, but given his physical impairments, Mr. Bernard was unable to sit upright and fell to the shower floor. *Id.* ¶¶ 62–64. There he remained, "forced to lie limp on the dirty shower floor struggling to breathe while a fellow inmate yelled out for someone to help him." *Id.* ¶¶ 65–66. After some time, "medical staff intervened" and returned Mr. Bernard to

his cell, where he was placed in four-point restraints. *Id.* ¶¶ 68, 70–71. Members of the medical staff attempted to remove the residual gas foam spray and pepper spray from Mr. Bernard's skin, but he was not fully cleaned until the following morning "when a healthcare worker bathed Mr. Bernard with soap and water [and] washed his hair and flushed his eyes." *Id.* ¶ 72.

In September 2020, Mr. Bernard filed this complaint asserting violations of his constitutional rights, various state laws, and the ADA and Rehabilitation Act. *See* [1], [57]. Mr. Bernard seeks monetary damages and an order enjoining Defendants from "causing Mr. Bernard to be subjected to IDOC's cell extraction policy that requires him to ambulate to the cell door to be handcuffed or that does not account for and accommodate his physical disability and mental illness." [57] ¶¶ 1–5.

## III. Analysis

### A. IIED Against Defendant Adjaley

In order to state a claim for intentional infliction of emotional distress, Plaintiff must allege: "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Aleman v. McDonald's Corp.*, No. 20-CV-6925, 2021 WL 3418857, at *5 (N.D. Ill. Aug. 5, 2021) (quoting *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017)); *see also Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). The conduct must be "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a

civilized community." *Dixon v. Cty. of Cook*, 819 F.3d 343, 351 (7th Cir. 2016) (internal quotation marks and citations omitted). To determine whether the conduct alleged is extreme and outrageous as required to state a claim, courts employ an objective standard, taking into consideration the particular facts of the case. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008) (citing *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)). Illinois courts also consider a number of nonexclusive factors that may inform the analysis, including: (1) the degree of power or authority that a defendant has over a plaintiff; (2) whether the defendant reasonably believed that his objective was legitimate; and (3) whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity. *Id.* (citing *Honaker*, 256 F.3d at 490–92).

Plaintiff lodges an intentional infliction of emotional distress claim against Defendant Jacqueline Adjaley, alongside several of the Correctional Officer Defendants (Defendants Thomas, Koch, Mrozik, Guttosch, McCurdy) and Defendant Jenkins, as discussed in greater detail below, *see infra, Section III.E*. Defendant Jacqueline Adjaley is, as a certified nurse assistant, the "sole medical Defendant in Count IX." [69] at 2. As such, Defendant Adjaley argues that because "the basis of the IIED claim asserted in Count IX is the allegations of excessive force used by the correctional officers during the cell extraction," and "Plaintiff does not make any allegations that even remotely indicate that Adjaley was involved in the cell extraction," the claim against her should be dismissed. *Id.* at 2–3.

In response, Plaintiff argues that Defendant Adjaley, despite not participating in the forceful cell extraction, nevertheless may be held liable because she "actively stood by and allowed the tactical officer Defendants to strike Plaintiff in his head, and spray him with OC and gas spray for failure to comply with orders." [77] at 7–8. Plaintiff does not argue that "Defendant Adjaley physically abused Plaintiff, but rather that her outrageous conduct, namely allowing Defendants' misconduct against Plaintiff with knowledge of Plaintiff's physical disabilities (thus susceptibility to extreme emotional distress)," is sufficient for tort liability. *Id.* at 7.

But that is not what the complaint says. The complaint's six-paragraph count of IIED focuses solely on the cell extraction: "Defendants' physical abuse including striking him in his head and body, spraying him in his face with OC spray and gas foam spray during a cell extraction when Mr. Bernard was physically incapacitated caused Mr. Bernard extreme emotional distress." [57] ¶ 151. The complaint does not allege that Defendant Adjaley was involved in the cell extraction, nor even that she was present *during* the cell extraction. Instead, the complaint states that Defendants Johnson, Koch, Thomas, Guttosch, Mrozik and McCurdy carried out the cell extraction, following orders from Defendants Mirsky and Berry. [57] ¶¶ 39–41. The complaint does not say that Defendant Adjaley had any involvement at all in the cell extraction.

Plaintiff attempts to hang his hat on one of those six paragraphs; paragraph 150 incorporates all of the preceding paragraphs of the pleadings. *Id.* ¶ 150 ("Mr. Bernard re-alleges and incorporates the preceding paragraphs of this pleading

as if fully alleged herein."). The other allegations in the complaint, at best, suggest that in addition to the Correctional Officers, *some* unnamed medical personnel were present for at least a portion of the cell extraction or the incidents immediately following: Correctional Officer Defendants "as well as the Wexford Health Sources Employees and/or IDOC Health Services did not intervene to stop the abuse." *Id.* ¶ 56; *see also* ¶¶ 60 (faulting Correctional Officer Defendants for failing to "follow the safety protocols to safely move Mr. Bernard or seek any assistance with the medical staff *who were present that day* despite knowledge that Plaintiff required specialized medical attention"); 68 ("*Eventually*, medical staff intervened and reminded the Defendant Correctional Officers that Mr. Bernard is immobile and can only be transferred by medical staff and medical devices."). These allegations still do nothing to suggest that Defendant Adjaley had any personal involvement in the cell-extraction and events immediately thereafter.

Plaintiff, in response to Defendants' motion, attempts to reframe his pleading. While the stated basis in the complaint for IIED turns on the forceful cell-extraction, *see id.* ¶ 151 (describing Plaintiff's emotional and physical distress as a result of the forceful cell-extraction), Plaintiff argues that he may hold Defendant Adjaley liable as she "actively stood by and allowed tactical officer Defendants to strike Plaintiff in his head, and spray him with OC and gas spray." [77] at 6. As discussed above, however, Plaintiff's complaint does not contain any allegations that Defendant Adjaley was present during the events of August 27th and, more to the point, Plaintiff's IIED count does not state, much less suggest, this newfound theory of

liability against Defendant Adjaley. *Compare id*. at 6–7, *with* [57] ¶¶ 151–53. Plaintiff's argument that this bystander theory of liability may be found in the encompassing nature of paragraph 150 is unpersuasive. And, while Plaintiff is correct to note that courts in this district have routinely allowed deliberate indifference and failure to provide medical care allegations to bolster an IIED claim, they have done so when the plaintiff's complaint fairly put the defendants on notice of the allegations against them. *See Cruz v. Cook Cty. Sheriff's Off.*, No. 14-CV-7935, 2016 WL 5234592, at *7 (N.D. Ill. Sept. 22, 2016) (denying motion to dismiss where defendants challenged whether the alleged conduct rose to the level of "extreme and outrageous," rather than the underlying conduct itself); *Piercy v. Whiteside Cty., Ill.*, No. 14 CV 7398, 2016 WL 1719802, at *8 (N.D. Ill. Apr. 29, 2016) ("The allegations supporting his deliberate indifference claim are sufficient to support his IIED claim, as well." (citing *Awalt v. Marketti*, 74 F. Supp. 3d 909, 942 (N.D. Ill. 2014)). As it stands, Plaintiff's complaint does not fairly put Defendant Adjaley on notice of the claims asserted against her and must be dismissed. *See, e.g., Brooks v. Ross*, 578 F.3d 574, 580–82 (7th Cir. 2009) (explaining that a plaintiff must "put defendants on notice of what exactly they might have done to violate" the plaintiff's rights and "connect specific defendants to illegal acts"). At this early stage, however, the Court dismisses the claim against Defendant Adjaley without prejudice.

### B.    All Counts against Defendant Wexford

In Count X, Plaintiff raises the doctrine of *respondeat superior* against Defendant Wexford: "Defendant Wexford, as a private corporation acting under color

of state law, should additionally be held liable under 42 U.S.C. § 1983 for the conduct of its employees acting within the scope of their employment." [57] ¶ 159. To the extent Plaintiff seeks to hold Wexford liable for the federal constitutional violations of Wexford's employees on a *respondeat superior* basis, the Seventh Circuit's law plainly eliminates that possibility: "*Respondeat superior* liability does not apply to private corporations under § 1983." *Shields v. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (following *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)); *see also Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015) ("In this circuit, a private corporation cannot be held liable under § 1983 unless it maintained an unconstitutional policy or custom."). While the Seventh Circuit has "questioned whether the rule against vicarious liability should indeed apply to private companies" it nevertheless has chosen to "leave that question for another day." *Collins v. Al-Shami*, 851 F.3d 727, 734 (7th Cir. 2017); *Shields*, 746 F.3d at 789 ("[I]t would take a decision by [the Seventh Circuit] sitting *en banc* or pursuant to Circuit Rule 40(e), or a decision by the Supreme Court to overrule" the existing rule). As other district courts have recognized, "this Court is not in a position to allow [Plaintiff's] *respondeat superior* claim to proceed, although [Plaintiff] may raise the issue on appeal if he so desires." *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 WL 3227310, at *7 (N.D. Ill. June 13, 2016) (citing *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("[D]ecisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions

of this court whether or not they agree.")).  Bound by precedent, this Court dismisses with prejudice any claims that Wexford is liable under § 1983 for the conduct of its employees on a *respondeat superior* basis.

That leaves *respondeat superior* liability for Plaintiff's state law IIED claim against Wexford-employee Defendant Adjaley.  [57] ¶ 158 ("Defendant Wexford is liable for the actions of its employees acting within the scope of their employment under state law.")  Wexford does not argue that *respondeat superior* liability is unavailable with respect to Plaintiff's state law claims.  Nevertheless, in view of the Court's finding regarding the IIED allegations against Defendant Adjaley, the Court also grants Defendant Wexford's motion to dismiss Count X, without prejudice, to the extent it seeks to hold Wexford vicariously liable for Defendant Adjaley's state law violations.

### C.    Defendants Pfister and Miles

#### 1.    Individual Capacity Claims

Turning to the Correctional Officer Defendants, Defendants Pfister and Miles seek dismissal of Count II (Cruel and Unusual Punishment), Count IV (Denial of Medical Care), and Count V (Failure to Intervene) as asserted against them. Defendant Randy Pfister is an IDOC employee and the former warden of Stateville; Defendant Sherwin Miles was the assistant warden at Stateville.  [57] ¶¶ 13–15. Both Defendants are being sued in their individual and official capacities.  *Id.*

The complaint's factual allegations against Defendant Pfister and Defendant Miles are nonexistent.  [84] at 4 ("[T]here are no factual allegations made against

Defendants Pfister or Miles."). In the absence of specific factual allegations supporting the inference that Defendants Pfister and Miles were in some way personally involved in the underlying constitutional deprivation, they cannot be held liable. It is "well established that '[f]or constitutional violations under § 1983 . . . a government official is only liable for his or her own misconduct.'" *Perez*, 792 F.3d at 781 (quoting *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015)); *see also Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003) ("In addition to the element of deliberate indifference, § 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." (citations omitted)).

That does not mean, however, that Plaintiff cannot allege a viable claim. A defendant may be personally liable "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (alterations in original) (citations omitted) (internal quotation marks omitted); *Palmer*, 327 F.3d at 594 ("Although direct participation is not necessary, there must at least be a showing that the [defendant] acquiesced in some demonstrable way in the alleged constitutional violation."). Because the Third Amended Complaint is devoid of any such allegations, however, the Court grants the motion to dismiss the claims against Defendants Pfister and Miles. The Court does so without prejudice, but notes that the opportunity to amend in the face of a motion to dismiss is not limitless.

13

### 2. ADA and Rehabilitation Act Claims

Defendants also move to dismiss Count VI (Violation of the Americans with Disabilities Act) and Count VII (Violation of the Rehabilitation Act) as asserted against Defendants Pfister and Miles. In order to state a claim under the ADA and/or Rehabilitation Act, Plaintiff must allege that: "(1) he is qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Employees of the Department of Corrections are "not amenable to suit under the Rehabilitation Act or the ADA." *Id.* at 670. The "only proper defendant in a claim under the ADA or Rehabilitation Act is the state agency (or state official acting in his or her official capacity)." *Bradley v. Baldwin*, No. 19-CV-0205-NJR, 2019 WL 1953962, at *4 (S.D. Ill. May 2, 2019) (dismissing ADA and Rehabilitation claims against prison warden). While Plaintiff may proceed on his ADA and Rehabilitation claims against the IDOC and/or the IDOC Director in his official capacity—in this case Defendant Jeffreys[3] (the acting IDOC Director, *see* [57] ¶ 12)—Plaintiff may not proceed in his ADA and Rehabilitation claims against Defendant Pfister and Miles.

---

[3] Defendant Jeffreys assumed the role of acting Director of IDOC, *see* [57] ¶¶ 11–12; [84] at 1 n.1, and is thus automatically substituted in his official capacity for Defendant Baldwin, *see* Fed. R. Civ. P. 25(d); *Venson v. Gregson*, No. 3:18-CV-2185-MAB, 2021 WL 673371, at *1 (S.D. Ill. Feb. 22, 2021) ("Plaintiff sued John Baldwin as the Director of the Illinois Department of Corrections, in his official capacity only. Baldwin, however, is no longer the IDOC Director; Rob Jeffreys is currently the Acting Director. Pursuant to Federal Rule of Civil Procedure 25(d), a suit does not abate when a party in an official capacity ceases to hold office while the action is pending, but the officer's successor is automatically substituted as a party. Consequently, Rob Jeffreys, in his official capacity, is hereby substituted for John Baldwin as a Defendant in this case.").

14

Accordingly, the Court dismisses Counts VI and VII against Defendants Pfister and Miles with prejudice. *See also* [93] at 11.[4]

### D. Defendant Jeffreys

In Count III, Plaintiff asserts a claim against Defendant Jeffreys, in his official capacity as the acting Director of IDOC, under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Plaintiff asserts that the IDOC maintains a cell extraction policy that fails to "accommodate for inmates who are physically disabled like Mr. Bernard, and who are unable to comply with the officer's commands to walk to the cell door." [89] at 3; [57] ¶ 105. The alleged cell extraction policy, beyond failing to consider inmate's physical limitations, also fails to "accommodate for those with mental illnesses that similarly might make compliance with the order to cuff up impossible." [89] at 3; [57] ¶ 108. The alleged policy promotes using physical force, including by way of gas foam and O.C. spray, against those inmates who are unable to comply. [89] at 3 (explaining that "'[f]ailure to comply despite physical limitations will necessarily result' in the inmate being sprayed with O.C. [s]pray and gas foam." (quoting [57] ¶ 105) (alterations in original)). According to the complaint, Plaintiff "fears that he may be subjected to IDOC's cell extraction policy in the future and that will necessarily result in the

---

[4] Defendant Wilks is named in the complaint, *see* [57] ¶ 14 ("Defendant Justin Wilks is an IDOC employee and the current acting Warden of Dixon where Mr. Bernard currently resides."), but is not subject to any of Plaintiff's claims. Instead, Plaintiff requests an order from this Court enjoining Defendants Jeffreys and Wilks from enforcing IDOC's cell extraction policy against Mr. Bernard, *see id.* at 25 (Prayer for Relief). To the extent Plaintiff asserts violations of the ADA and Rehabilitation Act against Defendant Wilks, the Court dismisses those claims with prejudice, and Plaintiff appears to agree with such a result in his response. *See also* [93] at 4 ("To the extent that Defendants have stated in their respon[se] that the Director of IDOC is the proper defendant for any injunctive relief ordered by this Court, Plaintiff agrees to dismiss Defendant Wilks from counts six and seven as well.").

unnecessary use of O.C. spray and/or gas foam because he will be unable to comply with the officer's order to walk to the cell door." [57] ¶ 112.

Defendants argue that the claim must be dismissed because a claim against the Director in his official capacity is the same as a claim against the IDOC, and the IDOC is protected from suit by sovereign immunity under the Eleventh Amendment. *See* [84] at 8–9; [93] at 2–3; *see also Norfleet v.* Walker, 684 F.3d 688, 690 (7th Cir. 2012) ("plaintiff sued the defendants in their official capacity, and so the lawsuit is against a state agency"). The Eleventh Amendment generally bars private suits in federal court against a state for monetary damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000). That immunity extends to state agencies as well and, subject to the *Ex Parte Young* doctrine, to state employees acting in their official capacities. *MCI Telecomm.*, 222 F.3d at 336–37 (discussing *Ex Parte Young*, 209 U.S. 123 (1908)). Under the exception outlined in *Ex Parte Young*, the Eleventh Amendment does not bar a lawsuit against an individual state official in their official capacity for an ongoing violation of federal law if the remedy sought is prospective injunctive or declaratory relief. *MCI Telecomm.*, 222 F.3d at 345 ("[A] private party may sue individual state officials in federal court to obtain prospective relief for an ongoing violation of federal law.").

The *Ex Parte Young* doctrine applies in this case. In Count III, Plaintiff explains that he "fears that he may be subjected to IDOC's cell extraction policy in the future," [57] ¶ 112, and requests that this Court enter an order enjoining

16

Defendant Jeffreys "from causing Mr. Bernard to be subjected to IDOC's cell extraction policy that requires him to ambulate to the cell door to be handcuffed in the future or that does not account for and accommodate his physical disability and mental illness," *id.* ¶ 4. In this way, Plaintiff seeks prospective relief to address what he alleges is an ongoing violation of his constitutional rights. *See Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 298–99 (1997) (Souter, J., dissenting) ("The plaintiff must allege that the officers are acting in violation of federal law, and must seek prospective relief to address an ongoing violation, not compensation or other retrospective relief for violations past." (internal citation and footnote omitted)). Consequently, Plaintiff's *Monell* claim is not barred by operation of the Eleventh Amendment.

Nevertheless, to prevail on his *Monell* claim, Plaintiff "must eventually show that (1) he suffered a deprivation of a constitutional right; (2) as a result of an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was; (3) the cause of his constitutional injury." *Shields v. City of Chi.*, No. 12 C 6689, 2018 WL 1138553, at *3 (N.D. Ill. Mar. 2, 2018) (citing *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017)). While *Monell* claims are not subject to a heightened pleading standard, *see White v. City of Chi.*, 829 F.3d 837, 843–44 (7th Cir. 2016), the Seventh Circuit requires that a plaintiff plead "factual content that allows the court to draw the reasonable inference" that the defendant maintained a policy or custom that caused the alleged constitutional deprivation. *McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir. 2011) (quoting

17

*Iqbal*, 556 U.S. at 678).  Mere "legal conclusions or elements of the cause of action" must be disregarded.  *Id*. at 617.  Thus, boilerplate allegations that repeat elements of a *Monell* claim without any further factual content cannot survive a motion to dismiss.  *See, e.g.*, *Falk v. Perez*, 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013) ("[B]y alleging 'widespread practices,' 'customs,' and 'unofficial policies,' Plaintiff merely states boilerplate legal conclusions that are the elements of her *Monell* claim."); *Annan v. Vill. of Romeoville*, No. 12 C 3577, 2013 WL 673484, at *6 (N.D. Ill. Feb. 25, 2013) (holding that an allegations that defendant "maintains a policy by which officers use excessive force to arrest individuals with no probably cause or reasonable suspicion warranting such" was insufficient to state a *Monell* claim); *Sheppard v. Glendale Heights*, No. 11 C 1044, 2011 WL 6102012, at *4 (N.D. Ill. Dec. 5, 2011) (holding that an allegation that plaintiff was discriminated against on the basis of her sex and race "pursuant to a wide-spread practice" of the defendant was insufficient to state a *Monell* claim).  In short, although *Monell* claims "may proceed with conclusory allegations of a policy or practice, some facts must be pleaded to put the defendant on notice of the alleged wrongdoing."  *Taylor*, 2016 WL 3227310, at *4.

That is precisely the problem in this case.  Plaintiff alleges that "[o]n information and belief, IDOC has a cell extraction policy that does not accommodate for inmates who are physically disabled like Mr. Bernard, and who are unable to comply with correctional officers' commands to walk to the cell door to be handcuffed" which "necessarily result[s] in O.C. spray and gas foam being used" on those inmates.

[57] ¶¶ 105–107, 77–80.[5]  But Plaintiff's assertions are unsupported by any factual allegations regarding the experience(s) of any other inmates or constitutional violations.  Plaintiff offers nothing to suggest, much less support, the existence of the asserted policies beyond Mr. Bernard's own experience.   Merely asserting the existence of a "policy," without any factual allegations brings Plaintiff's *Monell* claim within the realm of those routinely dismissed by courts in this District.   *See Johansen v. Curran*, No. 15-cv-2376, 2016 WL 2644863, at *8 (N.D. Ill. May 10, 2016) (conclusory allegations of a policy or practice in support of a *Monell* claim are not factual allegations and do not contribute to the plausibility analysis in the face of a motion to dismiss); *Arita v. Wexford Health Sources, Inc.,* No. 15-CV-01173, 2016 WL 6432578, at *3 (N.D. Ill. Oct. 31, 2016) ("unsupported, boilerplate allegation[s]" cannot survive a motion to dismiss where plaintiff relies on "information and belief" and fails to allege "any facts regarding the experiences of other inmates"); *Taylor*, 2016 WL 3227310, at *4 ("[Plaintiff] does not allege that any other detainee suffered from similar issues, only including a conclusory reference to other prisoners' experiences at Stateville."); *Winchester v. Marketti*, No. 11-CV-9224, 2012 WL 2076375, at *4 (N.D. Ill. June 8, 2012) (finding plaintiff's failure to plead "a pattern of similar constitutional violations with any degree of factual specificity" fatal to his *Monell* claim).

---

[5] In the alternative, Plaintiff also posits, without more, that the IDOC lacks an official policy "for cell extractions to be performed on physically disabled inmates or cell extractions performed on inmates suffering from mental illness or a mental health crisis."  *Id*. ¶ 81.

19

In sum, while the Court finds that Plaintiff may proceed in his *Monell* claim against Defendant Jeffreys for prospective injunctive relief under the exception recognized in *Ex Parte Young*, the Court also finds that Plaintiff failed to set forth sufficient factual allegations to support such claims. Accordingly, the Court dismisses Plaintiff's *Monell* claim against Defendant Jeffreys without prejudice.

### E. State Law Claims Against IDOC Defendants

Plaintiff asserts two state law claims against Defendants Thomas, Jenkins, Koch, Mrozik, Guttosch, and McCurdy: Willful and Wanton Misconduct (Count VIII) and IIED (Count IX). Defendants move to dismiss both claims based upon sovereign immunity. Under the Illinois State Lawsuit Immunity Act, 745 Ill. Comp. Stat. 5/0.01 *et seq.*, the State of Illinois and its agents are generally immune from suit in any court except the Illinois Court of Claims. *See* 705 Ill. Comp. Stat. 505/8(a) (2020) (the Illinois Court of Claims has "exclusive jurisdiction to hear and determine . . . [a]ll claims against the State founded upon any law of the state of Illinois").[6] A claim brought against a state employee is deemed a claim brought against the state when "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Murphy*, 844 F.3d

---

[6] Under the familiar *Erie* doctrine, the Illinois immunity statute applies to claims in federal court arising under state law. *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016) (citing *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938)).

at 658 (citations and internal quotation marks omitted). "The doctrine of sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Leetaru v. Bd. Of Trustees of Univ. of Ill.*, 32 N.E.3d 583, 595 (Ill. 2015); *accord Murphy*, 844 F.3d at 658–59. This exception, termed the officer suit exception, "is premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not." *Murphy*, 844 F.3d at 659 (citation omitted).

While Plaintiff alleges that Defendants acted within the scope of their authority, he also posits that the IDOC Defendants' actions "were rooted in an abuse of power or authority." [57] ¶ 152. Plaintiff's allegations thus raise the issue of whether the IDOC Defendants were acting within the scope of their authority when they resorted to force during the cell extraction. *Taylor*, 2016 WL 3227310, at *6 (finding an issue of fact where plaintiff alleged both that IDOC officer's actions "were rooted in an abuse of power or authority," and that they acted "within the scope of their employment").

Nevertheless, the "sovereign immunity determination 'does not depend simply upon whether the employee was acting within the scope of his employment when he committed the act in question' but rather 'turns on the *source of the duty* with the breach of which the employee is charged.'" *Id*. (emphasis in original) (quoting *Fritz v. Johnson*, 807 N.E.2d 461, 466 (Ill. 2004)). Here, Plaintiff's IIED claim and willful and wanton misconduct claim against the IDOC Defendants stem from the

officers' use of excessive force (Count I).  *See* [57] ¶¶ 151 ("Defendants' physical abuse including striking him in his head and body, spraying him in his face with OC spray and gas foam spray during a cell extraction when Mr. Bernard was physically incapacitated caused Mr. Bernard extreme emotional distress."); 147 ("Defendants' physical abuse, including striking him in his head and body, spraying him in his face with OC spray and gas foam spray during a cell extraction when Mr. Bernard was physically incapacitated, caused Mr. Bernard extreme emotional distress.").  Given that Plaintiff alleges that state agents acted in violation of constitutional law, and in excess of their authority, sovereign immunity does not apply.  *Taylor*, 2016 WL 3227310, at *6 (collecting cases).

Defendants nevertheless argue that the Illinois Supreme Court's recent decision in *Parmar v. Madigan* modified the scope of the officer suit exception to sovereign immunity.  106 N.E.3d 1004, 1009 (Ill. 2018).  In *Parmar*, the Illinois Supreme Court found that "a complaint seeking to prospectively enjoin such unlawful conduct may be brought in the circuit court without offending sovereign immunity principles" and described the "officer suit exception" as synonymous with "the 'prospective injunctive relief exception.'" *Id*.; *see also Leetaru*, 32 N.E.3d at 611–12 (Burke, J., dissenting) (limiting the officer suit exception to suits seeking to enjoin ongoing violations).  Defendants read this language from *Parmar* to curtail the officer suit exception to claims for prospective injunctive relief, not retrospective claims for damages.  Not only would Defendants' interpretation of *Parmar* bring the officer suit exception closer to the exception recognized in *Ex Parte Young* discussed above, *see*

*Leetaru*, 32 N.E.3d at 611 (Burke, J., dissenting) (equating the officer suit exception with the exception recognized in *Ex Parte Young*), but it would also suggest that sovereign immunity applies in this case, *see, e.g.*, *Marshall v. Fries*, No. 19 C 55, 2019 WL 4062549, at *6 (N.D. Ill. Aug. 28, 2019) (citing *Parmar* for the proposition that the officer suit exception "applies only where a plaintiff seeks to prospectively enjoin unlawful conduct, and not where plaintiff only seeks damages for a past wrong"); *Hyzy v. Bellock*, No. 3:18-CV-3039, 2019 WL 1781400, at *4 (C.D. Ill. Apr. 28, 2019) (same). *But see Mitchell v. Dumais*, No. 20-cv-990, 2021 WL 860359, at *3 (N.D. Ill. Mar. 8, 2021) (finding, on summary judgment, that "*Parmar* doesn't change the sovereign immunity test. Regardless of the type of violation alleged (tort, statutory, constitutional), what matters for determining whether the claim is against the state is the source of the duty breached."); *Peirick v. Dudek*, No. 20-cv-3013, 2020 WL 6682891, at *3 (N.D. Ill. Nov. 12, 2020) (explaining that *Parmar* does not abrogate longstanding precedent).

The law on this issue remains unclear. For example, in *T.S. v. County of Cook, Illinois*, the court surveyed recent precedent in this area and, for purposes of interlocutory appeal, concluded that "there are substantial grounds for difference of opinion on the proper interpretation of *Parmar*." No. 16 C 8303, 2021 WL 4992548, at *6 (N.D. Ill. Oct. 26, 2021). In view of the uncertainty, and the fact that "the Seventh Circuit may be interested in revisiting its decision in *Murphy* in light of *Parmar*," the *T.S.* Court granted Defendants' motion to certify for interlocutory appeal the question of "whether, under Illinois law, the officer suit exception to

23

sovereign immunity applies only if a plaintiff seeks to enjoin a continuing violation of statutory or constitutional law." *Id*. at *6. As of the date of this writing, the Seventh Circuit has not yet ruled on the pending appeal.

At this preliminary stage, the Court declines to dismiss Plaintiff's state law claims against the IDOC Defendants. Here, Plaintiff has alleged that IDOC Defendants' conduct, which serves as the basis for his IIED claim, violated the Eighth Amendment and there is a factual issue concerning whether the IDOC Defendants were acting within the scope of their employment. In the absence of any Seventh Circuit law to the contrary, this Court finds that Plaintiff's allegations survive a motion to dismiss. *See Bentz v. Ghosh*, 718 Fed. App'x. 413, 419 (7th Cir. 2017) (holding state sovereign immunity did not bar state law claim for negligence where the plaintiff alleged the defendants' conduct also constituted deliberate indifference in violation of the Eighth Amendment); *Murphy*, 844 F.3d at 660 (holding state sovereign immunity did not bar state law claim for battery where the plaintiff also alleged and proved the defendants' conduct violated the Eighth Amendment prohibition on excessive force); *Whitlock v. Brueggemann*, 682 F.3d 567, 590 (7th Cir. 2012) (holding state sovereign immunity did not bar state law claims against Illinois State Police defendants where the plaintiff also alleged that the defendants violated his constitutional rights); *Mitchell*, 2021 WL 860359, at *3 (denying summary judgment on sovereign immunity because a material dispute of fact remained concerning whether state troopers committed acts outside their lawful duties and consequently whether plaintiff's battery claim was against the state).

24

In so doing, however, the Court orders the parties to file an updated status report following the Seventh Circuit's decision in *T.S. v. County of Cook, Illinois*. In the interim, the Court denies the IDOC Defendants' motion to dismiss Count VIII and Count IX as asserted against them.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant Adjaley's and Defendant Wexford's motion to dismiss, [69]. The Court grants the IDOC Defendants' motion to dismiss Plaintiff's *Monell* claim and denies the IDOC Defendants' motion to dismiss Plaintiff's Illinois state law claims, [84]. The Court also grants Defendants Pfister's and Miles' motion to dismiss Plaintiff's claims against them in an individual capacity without prejudice, and grants their motion to dismiss the ADA and Rehabilitation Act claims with prejudice. *Id*.

Dated: March 22, 2022                    Entered:

John Robert Blakey
United States District Judge